In the Matter of James Barnard Shugrue.

Habeas Corpus. Criminal Docket. No. 15,476.

Decided November 4, 1883.
The Chief Justice and Justices Mac Arthur and James sitting.

1. Sections 1418 and 1419 of the Revised Statutes of the United States do not apply to enlistments in the marine corps.

2. A person under twenty-one years of age cannot be enlisted in the marine corps without the consent of his parent, where such parent retains his right of control.

The Case is stated in the opinion.

B. J. Lovejoy for petitioner.

A. S. Worthington and Randolph Coyle for respondent.

Mr. Justice James delivered the opinion of the court.

The petitioner, James Shugrue, states that his son, James Barnard Shugrue, a minor, left petitioner's house and custody on or about the 8th of September, 1884, without petitioner's permission, and offered himself for enlistment in the United States Marine Corps; that he was illegally received therein at the city of Washington without the knowledge or consent of petitioner, and is still in the unlawful custody of Colonel Charles D. McCauley, commandant at the marine barracks in Washington. Colonel McCauley's return sets out the facts of the application and enlistment, and states that respondent believes James Barnard Shugrue to be over eighteen years of age. Respondent exhibits with his return a copy of the application and consequent enlistment. The latter is in the following words: "I, James Barnard Shugrue, born in U. S., Dist. of Col., Town of Washington, aged 21 7-12 years, and by occupation a farmer, do hereby acknowledge to have voluntarily enlisted, this 8th day of September, 1884, as a private in the United States Marine Corps, U. S. Navy, for the period of five years, unless sooner discharged by competent authority; do also agree to accept such bounty, pay, rations and clothing as are or may be established by law. I further agree to accept and acknowledge all acts of Congress relating to the United

States Marine Corps from its organization to th se presents, and also such other act or acts as may hereafter be passed by the Congress of the United States having relation to the Marine Corps of the United States during the time of my enlistment. And I, James Barnard Shugrue, do solemnly swear that I will bear true allegiance to the United States of America, and that I will serve them honestly and faithfully against all their enemies and opposers whomsoever, and observe and obey the order of the President of the United States, and the orders of the officers appointed over me, according to the rules and articles for the government of the army and navy of the United States; and further that I am the full age of (twenty-one." This paper was sworn to before Major Houston, who was in charge of the recruiting service.

It was agreed at the argument that the actual age of this recruit is between eighteen and nineteen years. Conceding this, the respondent claims that minors of that age are competent, under the operation of the following provisions of the Revised Statutes, to enlist in the marine corps without the consent of parents or guardians:

"Sec. 1418. Boys between the ages of fourteen and eighteen may be enlisted to serve in the navy until they shall arrive at the age of twenty-one years; *other* persons may be enlisted to serve for a period not exceeding five years, unless sooner discharged by the direction of the President.

"Sec. 1419. Minors between the ages of fourteen and eighteen years shall not be enlisted for the naval service without the consent of their parents or guardians.

"Sec. 1621. The marine corps shall at all times be subject to the laws and regulations established for the government of the navy, except when detached for service with the army by order of the President, and when so detached they shall be subject to the rules and articles of war prescribed for the government of the army."

In application of these provisions it is claimed, first, that section 1418 provides for *two classes of persons* as well as

two periods of enlistment; the first class including boys between fourteen and eighteen years, the second *all other* persons, and, necessarily, among the latter boys over eighteen; secondly, that section 1419, by requiring the assent of parents or guardians in the case of one of these classes, while it imposes no such condition to the other, intends that such consent is unnecessary in the other case; unnecessary, that is to say, as well to boys over eighteen as to adults included in that other class; and thirdly, that section 1621 applies these provisions to enlistments into the marine corps when it declares that the marine corps shall be subject to the *laws* and regulations established for the government of the navy, except when detached for service with the army.

For the purposes of this case it may be conceded that sections 1418 and 1419 taken together, authorize the enlistment of minors over eighteen "to serve in the navy" without the consent of their parents or guardians; the question still remains to be considered whether this general provision relating to enlistments "to serve in the navy" has any application to enlistments into the marine corps. It was claimed at the argument, on the part of the respondent, that it does so apply, because the marine corps is a part of the navy; and that it was held to be so by the Supreme Court of the United States in the case of Wilkes *vs.* Dinsmore, 7 Howard, 89. In that case the re-enlistment, under the provisions of the act of March 2, 1837, 5th Stat., 152, of persons "enlisted for the navy" was one of the matters under consideration. The defendant in error had entered into a contract of re-enlistment as a marine before the expiration of his first term, and before the sailing of the exploring expedition, and the question was whether that was, within the meaning of that act, the re-enlistment of a person "enlisted for the navy." Another provision of the same act authorized the detention and continued service of persons "enlisted for the navy" after the expiration of their enlistments and without re-enlistment. The further question was, whether *this* power applied to marines as persons "enlisted for the navy" within the meaning of that act.

As to the validity of Dinsmore's alleged re-enlistment, the court said: "It is certainly no forced construction to consider them (marines) as embraced *in the spirit* of the act of 1837, by the description of persons enlisted for the navy." And in speaking of the power to detain after the expiration of an enlistment during an unfinished voyage, they said: "Considering the marines as embraced *in the spirit, if not the exact letter*, of this provision, for reasons heretofore assigned, connected with its language and object, and their position in conjunction with the navy, it would follow that the commander, supposing the detention of the plaintiff on board essential to the public interests, could rightfully direct him to remain."

The hesitating terms in which the court thus identified marines with persons "enlisted for the navy" cannot fail to attract observation. And it must be observed, too, that the reasons given by the court for holding marines to be persons "enlisted for the navy," within the spirit of that act, were peculiar to the case presented by that act, and do not apply to an original enlistment. The court did not decide the broad proposition that a marine is in all cases a person "enlisted for the navy;" they held him to be such within *the spirit of that particular act*. After a careful consideration of Mr. Justice Woodbury's reasoning in arriving even at that limited conclusion, we shall not extend it to any but the very case presented in Wilkes *vs*. Dinsmore; and we have no hesitation in holding that the question, whether an original enlistment into the marine corps under the general provisions for enlistment, is an enlistment "to serve in the navy," and as such is governed by sections 1418 and 1419, comes before us uncontrolled by any decision of the Supreme Court.

The historical consideration, to which Mr. Justice Woodbury gave some weight, was presented to us, that when the naval armament was first established, marines were strictly enlisted into the navy. Undoubtedly this was the character of their enlistment under the acts of 1794, 1797 and 1798, providing for the construction and manning of certain

ships; but we are of opinion that the act of July 11, 1798, 1st Stat., 594, by which the marine corps was established, worked a complete change in the matter of enlistment, and in the status which mere enlistment produced. The corps was established by that act as a complete organization, and neither that act, nor any subsequent act, contains any declaration or implication that, as a corps, it was to be a part or branch of the navy. We observe that, in demonstrating the status of a "marine," within the spirit of the act of 1837, Mr. Justice Woodbury gave some little weight to his mere name. If such considerations are to have any weight, it should be noted that the original act of establishment contains a phrase which is more suggestive of an army than a navy status. Its very first sentence provides, "that, *in addition to the present military establishment,* there shall be raised and organized a corps of marines." "Military establishment" was the common legislative designation of the army of the United States, and, if it were not for subsequent provisions as to the service of the corps, this language might well be taken to express an addition to the army. But phrases are not important in the presence of the provisions of a statute. No doubt the historical uses of marines were still the chief object of this corps; namely, service in connection with the navy; but it was distinctly provided by the original act of establishment, as it has been by all subsequent acts, that marines were to serve with the navy or with the army, just as they might be ordered by the President. These provisions have been embodied in sections 1616 and 1619 of the Revised Statutes. Section 1616 provides that "marines may be detached for service on board the armed vessels of the United States, and the President may detach and appoint, for service on said vessels, such of the officers of said corps as he may deem necessary." And section 1619 provides that "the marine corps shall be liable to do duty in the forts and garrisons of the United States, on the sea coast, or *any other duty on shore,* as the President, at his discretion, may direct." The nature of its shore service is further indicated by sec-

tion 1621, which provides for its government "when detached for *service with the army* by order of the President." These are the only provisions of law relating to the service of the marine corps or of its enlisted men, and they show conclusively that, in contemplation of law, an enlistment "into the marine corps" is no more an enlistment "to serve in the navy" than it is an enlistment to serve in a manner and in places wholly disconnected with the navy. Specifically, it is an enlistment to serve as ordered by the President; and it is not the mere enlistment, but the subsequent fact of an order to that effect, which puts the enlisted man into either the naval or the military service. Such an enlistment, involving an alternative liability as to service depending upon executive discretion, cannot be understood to fall within a provision which relates to persons "*enlisted to serve in the navy.*" As a matter of interpretation, this language plainly refers to a direct undertaking and not to a mere liability to serve in that way; and the persons to whom it applies are indicated by another provision, together with which it should be construed. Section 1417 regulates "the number of persons who may at any time be *enlisted into the navy* of the United States, including seamen, ordinary seamen, landsmen, mechanics, firemen, coalheavers, apprentices and boys." Although the word "including" is prefixed to this enumeration, we take it to be a complete enumeration of the persons who may be "enlisted into the navy;" and clearly there is no reason to suppose that there is any difference between the phrases "enlisted *into the navy*" and "enlisted *to serve in* the navy," by virtue of which the latter shall be held to describe persons who are not "enlisted *into the navy.*" It has been shown that persons "enlisted into the marine corps" are not "enlisted in the navy;" so that it follows that section 1418 does not describe them.

But there is another and, as we think, conclusive proof that this section was not intended to cover enlistments into the marine corps, in the fact that it is irreconcilable with the provision as to enlistments specifically relating to that corps. The first clause of section 1418 provides that boys between the ages of fourteen and eighteen years may be enlisted to

42

serve until they shall arrive at the age of twenty-one years. Under this clause a boy may be enlisted for a little over three years. But section 1608 provides that "enlistments into the marine corps shall be for a period *not less than five years*." Of course *this* clause is inapplicable to marines. The second clause provides that "other persons may be enlisted for a period *not exceeding* five years." It permits enlistments, therefore, for a period of less than five years, and is, equally with the first clause, inapplicable to marines, who cannot lawfully be so enlisted.

Finally, the argument that, even if sections 1418 and 1419 do not of their own operation cover enlistments into the marine corps, as enlistments to serve in the navy, yet they have been in fact applied to those enlistments by section 1621, must fail, because, as a matter of construction, the latter section was not intended to bear at all upon the subject of voluntary enlistments. It provides that the marine corps shall at all times be subject to the *laws* and regulations established for the *government* of the navy, except when detached for service with the army by order of the President." But a law providing one of the terms of a voluntary enlistment is not in any sense a law for the government of the navy. Government applies to persons who by some act have subjected themselves to government, but this provision merely relates *to a contract* which the United States propose to make with persons as yet entirely free from these navy laws. The very largest application of which this provision is susceptible was made in the case of Wilkes *vs.* Dinsmore, already referred to. It was there held that the provision of the act of 1837, which authorized the compulsory detention of a seaman whose period of enlistment expired during a voyage when his continued service might be indispensable to the safety of the ship, was a law for the *government* of the navy, and, therefore, was strictly applied to marines by the provision which is now embodied in section 1621. This ruling serves to illustrate the distinction pointed out. No such character or operation can be imputed to a law regulating a contract to be made with a person not yet in the

service. Such a law may govern a contract, but it does not govern persons. We hold, then, that section 1621 makes no figure in this matter.

The only provisions of law, then, which in any way bear upon this matter are section 1596 of the Revised Statutes, which prescribes the number of men to be enlisted into the marine corps, and section 1608, which simply prescribes the period for which such enlistment shall be made. There is no express provision touching qualifications. In the absence of any such provision, what are we to understand to have been the intent of a simple provision for enlistment as to the question before us?

It was, of course, in the mind of Congress, that enlistment involved a contract, and, therefore, contracting capacity. As the United States, as such, has no common law, and Congress has established no general rule as to the age of majority and of capacity to contract in those cases of contract which are under its control, it follows that it must have been intended that this contract was to be made by persons whose contracting capacity was already determined in some other way. It was known to Congress that, by a rule prevailing universally in the States of this Union, a person under twenty-one years of age was not capable of making an absolutely binding contract, and that his time and services were subject to the claim and control of his father while the latter maintained or was ready to maintain him. It is not to be presumed that Congress has intended to interfere with this known right, although it had the power to do so, when it has not expressed the intention to do so. We must conclude, then, that Congress intended that this known domestic right should stand undisturbed, and did not intend that any person under twenty-one years of age should enlist in the marine corps without the consent of his parent, where such parent retained his right of control. It must be added that this assumption that Congress knew and had in mind that general rule of State law as to minority and parental right, is not a mere assumption without corroboration. The existence of that rule has been distinctly recognized by it in

other legislation on this class of subject. Section 1117 of the Revised Statutes provides that "no person under the age of twenty-one years shall be enlisted or mustered into the military service of the United States without the written consent of his parents or guardians; provided, that such minor has such parents or guardians entitled to his custody and control." This is a complete recognition by Congress of the legal proposition that minors, persons under twenty-one years of age, are primarily under the custody and control of parents, and have not an independent contracting capacity. Such a provision recognizes that this status of incapacity and this parental right exist, until Congress, by its paramount power in this particular matter, alters that status and interferes with that right. No intention so to overrule the existing status and right has been expressed. Both, therefore, stand, and it follows that the enlistment now under consideration was unauthorized. A discharge is accordingly ordered.